## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Virginia Schurmeier, | Civil No. 06-3860 (DWF/AJB) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Nash Finch Company, | |
| Defendant. | |

Beth Bertelson, Esq., and Andrea R. Ostapowich, Esq., Bertelson Law Offices, PA, counsel for Plaintiff.

Jennifer G. Lurken, Esq., Lawrence R. King, Esq., and David M. Wilk, Esq., Larson King, LLP, counsel for Defendant.

## INTRODUCTION

Plaintiff Virginia Schurmeier brought suit against her former employer alleging that she was discriminated against on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. § 2000e ("Title VII"), and the Minnesota Human Rights Act ("MHRA"). The matter is currently before the Court on a Motion for Summary Judgment brought by Defendant Nash Finch Company ("Nash Finch"). For the reasons stated below, the Court denies the motion.

## BACKGROUND

Schurmeier began working for Nash Finch in November 1999 as an Operations Analyst in the Business Transformation Department. As an Operations Analyst,

Schurmeier analyzed data entry for a conversion to an upgraded billing program in Nash Finch's distribution centers. She worked in that capacity until November 2004, when she assumed the responsibilities of the Operations Shift Supervisor. Schurmeier replaced a male employee as the shift supervisor.[1] The parties dispute whether the change in position was a promotion; however, the record demonstrates that Schurmeier did not receive a pay raise, a new job description, or training for her new position. At the time Schurmeier moved into the role of Operations Shift Supervisor, Sharon Borine was Nash Finch's Vice President of Technology and Core Applications; Tom Rock was the Director of Technical Infrastructure; and Jim Witzman was manager of IT Operations. Witzman, who reported to Rock, immediately supervised Schurmeier. Borine, Rock, and Witzman all participated in the decision to place Schurmeier in the shift supervisor position.

As an Operations Shift Supervisor, Schurmeier was responsible for ensuring that tasks were properly scheduled and executed on the mainframe computer.[2] Nash Finch contends that Schurmeier had numerous problems scheduling tasks and caused computer outages. Nash Finch has submitted evidence that at least one internal client of

---

[1] This employee will be referred to as "the male employee" to protect his privacy. The record is unclear as to the male employee's exact job title in November 2004. However, it is clear that, whatever his title, Schurmeier took over his position and assumed his responsibilities.

[2] The failure to schedule and execute computer projects properly can cause computer "outages." During an outage, Nash Finch buyers cannot buy product and, therefore, cannot fill customer orders. In addition, Nash Finch cannot produce invoices, accept orders, or generate billing documents.

Schurmeier's, an employee at Nash Finch's St. Cloud distribution center, expressed dissatisfaction with Schurmeier's performance and eventually refused to work with Schurmeier because of scheduling errors.

On or around February 1, 2005, Witzman met with Schurmeier to discuss her performance, particularly the quality of Schurmeier's work, customer-relations skills, and productivity.  (Affidavit of David M. Wilk ("Wilk Aff."), Ex. 8.)  Witzman also sent Schurmeier a Constructive Performance Discussion Record ("Performance Record"), in which he summarized the February 1 meeting as follows:  "Concerns have been raised that the quality of the work within the operations area has gone down and the number of operator induced problems have increased since the operations reorganization where you took over as operations supervisor." (*Id*., Ex. 8.)  Witzman also detailed examples of Schurmeier's performance problems.  Finally, Witzman explained that any future issues would result in further disciplinary action, up to and including termination.

Nash Finch contends that Schurmeier's poor performance continued.  In addition, Nash Finch contends that Schurmeier refused to accept responsibility for the computer outages.  On or around February 17, 2005, Nash Finch terminated Schurmeier.  Nash Finch replaced Schurmeier with the male employee previously referenced.  *See* footnote 1.

Schurmeier disputes Nash Finch's allegations that she performed poorly. Schurmeier maintains that she performed well during her employment with Nash Finch, both before and after becoming an Operations Shift Supervisor.  In addition, Schurmeier has submitted evidence that she received positive reviews and awards prior to moving

3

into the supervisor position. Schurmeier further claims that male employees and their supervisors caused the errors that were attributed to her, and that Nash Finch was aware that the errors were caused by others when it terminated her.

Schurmeier filed a Charge of Discrimination with the EEOC. On January 19, 2006, the EEOC notified Schurmeier that it had dismissed her charge, stating that she would not be able to prove gender discrimination. (Wilk Aff., Ex. 17.) The EEOC also issued a Notice of Right to Sue.

## DISCUSSION

### I. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence, and the inferences that may be reasonably drawn from the evidence, in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record, which create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953,

957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

**II.** **Sex Discrimination**

Schurmeier alleges that she was discriminated against on the basis of her sex in violation of Title VII and the MHRA. The parties agree that the burden-shifting framework promulgated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies to the determination of whether Nash Finch is entitled to summary judgment on Schurmeier's claims. *See LaCroix v. Sears, Roebuck, & Co.*, 240 F.3d 688, 693 (8th Cir. 2001); *Johnson v. Baptist Med. Ctr.*, 97 F.3d 1070, 1072 (8th Cir. 1996). Under the *McDonnell Douglas* framework, if Schurmeier is able to establish a *prima facie* case of discrimination, the burden shifts to Nash Finch to produce a legitimate, non-discriminatory reason for the adverse employment action. *Johnson*, 97 F.3d at 1072. If Nash Finch is able to articulate such a reason, the burden then shifts back to Schurmeier to show that the proffered reason is merely a pretext for discrimination. *Id*. The elements and analysis of discrimination under the MHRA are the same. *Saulsberry v. St. Mary's Univ. of Minn.*, 318 F.3d 862, 866 (8th Cir. 2003).

To establish a *prima facie* case of sex discrimination, Schurmeier must demonstrate that she: (1) is a member of a protected group; (2) was qualified for the job at issue; (3) suffered an adverse employment action; and (4) circumstances exist which create an inference of discrimination. *Wheeler v. Aventis Pharms.*, 360 F.3d 853, 857

(8th Cir. 2004); *Johnson*, 97 F.3d at 1072. The fourth element can be met by demonstrating that similarly situated employees of the opposite sex were treated differently. *Johnson*, 97 F.3d at 1072.

Here, Schurmeier can establish that she was a member of a protected class and was terminated. Further, Nash Finch does not dispute that she was qualified for the job. The issue, therefore, is whether Schurmeier can establish the fourth element by demonstrating that similarly situated male employees were treated differently. At the *prima facie* stage, there is a "'low threshold' standard for determining whether employees are similarly situated." *Rodgers v. U.S. Bank*, 417 F.3d 845, 852 (8th Cir. 2005). Under this standard, the similarly situated employee must have been involved in or accused of the same or similar conduct but disciplined differently. *Id*.

Schurmeier contends that she was similarly situated to the male employee. The male employee occupied the position of shift supervisor prior to November 2004. Schurmeier contends that the male employee performed poorly as a shift supervisor and was responsible for errors similar to those that Nash Finch contends led to Schurmeier's termination. For example, Schurmeier points to the male employee's performance reviews in 2003 and 2004. In 2003, the male employee received an overall score of "2" (needs improvement). (Affidavit of Andrea R. Ostapowich ("Ostapowich Aff."), Ex. 11.) In 2004, the male employee received an overall score of "3" (commendable), but also received individual ratings under the heading of "Professional Skills" of "2" for "Planning and Organization," "Communication," and "Working with Others." (*Id*., Ex. 10.) Schurmeier has also submitted evidence that the male employee made numerous

6

mistakes, or supervised others who made mistakes, which caused delays and/or outages. These errors were documented in internal "problem tickets" and "root cause analysis" documents.[3]

In addition, Nash Finch returned the male employee to the position of shift supervisor in February 2005 to replace Schurmeier. Schurmeier argues that the male employee's poor performance continued, and has submitted evidence of errors and outages occurring, after his return. In addition, the record demonstrates that the male employee received an overall score of "2" (needs improvement) in both his 2005 and 2006 reviews. (*Id*., Exs. 15, 16.) The male employee was placed on a Performance Improvement Plan ("PIP") in 2006, but is still employed by Nash Finch.[4] In addition, evidence in the record indicates that Nash Finch had concerns with the male employee's customer-service skills.

The evidence shows that Nash Finch did not terminate the male employee for performance problems prior to 2004 or at any time after he replaced Schurmeier in 2005. Instead, Nash Finch created a new position for him in November 2004, reassigned him back to the shift supervisor position when Schurmeier was terminated in February 2005, and has continued to employ him as an Operations Shift Supervisor. In contrast, when

---

[3] Nash Finch argues that the male employee did not make errors as a shift supervisor. After reviewing the record, the Court determines that there are factual disputes over who was responsible for certain errors and outages. At the summary judgment stage, these disputes are resolved in Schurmeier's favor.

[4] Nash Finch uses PIPs to address an employee's performance issues prior to termination. The Court notes that there is no evidence that Schurmeier was ever placed on a PIP before she was terminated.

Nash Finch perceived that Schurmeier was making mistakes in her position as Operations Shift Supervisor, it informed her of its concerns and terminated her shortly thereafter. Based on the record, the Court determines that Schurmeier has satisfied her burden of demonstrating that she and the male employee were similarly situated, and that he was treated differently than her. Thus, Schurmeier has established her *prima facie* case.

The burden now shifts to Nash Finch to come forward with a legitimate, nondiscriminatory reason for its actions. Nash Finch maintains that it terminated Schurmeier for poor performance, because she refused to take responsibility for her mistakes, and because she was not truthful. These are all legitimate reasons to terminate an employee. Therefore, the presumption of discrimination disappears and Schurmeier can avoid summary judgment only if the evidence considered in its entirety creates a fact issue as to whether Nash Finch's proffered reason is pretext for discrimination. *Kohrt v. MidAm. Energy Co.*, 364 F.3d 894, 897 (8th Cir. 2004); *Johnson*, 97 F.3d 1073.

The Court first turns to Schurmeier's contention that Nash Finch's different treatment of a similarly situated male employee demonstrates pretext for discrimination. At the pretext stage, the test for determining whether employees are similarly situated is rigorous. *Rodgers*, 417 F.3d at 853. Schurmeier must demonstrate that she and a male employee were similarly situated in all relevant respects. *Id*. As discussed more fully above, Schurmeier has demonstrated that she and the male employee were both employed as Operational Shift Supervisors. Both were employed as such while under the supervision of Borine, Rock, and Witzman. In addition, Schurmeier has presented evidence that could lead a reasonable fact-finder to conclude that the male employee

8

made errors and had customer service issues similar to those that Nash Finch contends led to Schurmeier's termination. Finally, there is no dispute that, unlike Schurmeier, the male employee was not terminated. The Court determines that Schurmeier has raised a genuine issue of material fact as to whether Nash Finch's reason for terminating Schurmeier's employment was pretext for discrimination. Although Nash Finch may be able to offer a plausible explanation for its inconsistent treatment of Schurmeier and the male employee, this is a matter that should be decided at trial and not by summary judgment.

Schurmeier also contends that certain actions of, and comments made by, Rock and Witzman reflect discriminatory animus. Specifically, Schurmeier contends that after Nash Finch hired Rock and Witzman, she and other females were subjected to inappropriate comments and behavior. For example, Schurmeier overheard Witzman and Rock refer to high achieving female employees as "bitches" and "royal bitches." (Wilk Aff., Ex. 2 at 225, 226.) Schurmeier also claims to have observed Rock inappropriately touching females. In addition, Schurmeier claims Rock and Witzman discussed scotch and cigars with male employees only. For example, during a work-related trip, Rock stated that scotch was a "gentleman's drink" and offered one to Schurmeier's male colleague; at an event at his home, Rock offered the males cigars.

The Court notes that there are factual issues to be resolved with regard to who was involved in the decision to terminate Schurmeier in 2004. At this point, Schurmeier has submitted enough evidence that could lead a reasonable juror to conclude that Witzman and Rock played some role in that decision. Accordingly, evidence of derogatory

9

comments and inappropriate behavior on their parts could suggest discriminatory animus. These are issues to be decided at trial.

## CONCLUSION

The Court concludes that Nash Finch's Motion for Summary Judgment is denied. The Court notes that it is in the best interests of the parties to negotiate a resolution of this dispute. As the parties are aware, Magistrate Judge Arthur J. Boylan is available to assist in the negotiation of a settlement should the parties find such services to be helpful. If the Court may be of assistance in this matter, the parties should contact Gina Olsen, Calendar Clerk for Judge Donovan W. Frank, at 651-848-1296, or Kathy Thobe, Calendar Clerk for Magistrate Judge Arthur J. Boylan, at 651-848-1210.

For the reasons stated, **IT IS HEREBY ORDERED** that:

1. Nash Finch's Motion for Summary Judgment (Doc. No. 25) is **DENIED**.

Dated: November 20, 2007   s/Donovan W. Frank
DONOVAN W. FRANK
Judge of United States District Court